Good morning to the members of the court. My name is Hans Gienapp. I represent the plaintiffs who are the appellants in this matter. The appeal of the decision of the District Court to dismiss their lawsuit on the sole issue that it was a collective action. Each plaintiff was required to file a consent, an opt-in consent. Since no plaintiff did that, the statute had run as to every plaintiff. That decision was wrongly decided for three main reasons. The FLSA itself does not require that a lawsuit with many plaintiffs proceed as a collective action. It may go forward as a consolidated action. Plaintiff's lawsuit itself was neither conceived nor drafted nor filed as a collective action and relevant case law strongly suggests that plaintiffs are able to go forward in a consolidated action of this kind. The FLSA… Didn't it behoove you to speak up when Judge Whelan in San Diego characterized it in his transfer order as a collective action? The transfer order was not opposed by the plaintiffs. However, it was not opposed because the plaintiffs did not believe that the opposition of the case on the sole issue that it had described it as a collective action. It looked at all of the other factors that federal courts look at for transfer and it found, I think, much support for the defendant's argument that the case should be transferred from the Southern to the Central District. Well, were you there at the time? Did you see that word collective in there? I saw the order, Your Honor. I have seen the order. Wasn't that like a hand grenade going off in your face? It was not, Your Honor. Like I said, at the time the Plaintiffs' Council believed that that transfer order was inevitable, for lack of a better word, and it didn't occur to the plaintiffs at that time that Judge Whelan had somehow changed the character of their complaint. I think the FLSA is instructive on this. Section 216B says a case may move forward in a collective manner. However, that requires the plaintiffs to actually take an affirmative step of suing in a representative capacity. There are magic words in Section 216B that say essentially the plaintiffs are suing on behalf of themselves and other similarly situated plaintiffs. It does. It triggers a procedure by which other outlined in the FLSA that shows how a court should deal with a collective action. Some circuits actually go through a mini, almost like a certification process that a class action might go through. The Ninth Circuit does not do that. However, the FLSA itself clearly shows that my count is right. You said you had 351 individual plaintiffs. Is that right? How could that be managed as a consolidated case in the district court? Well, the way we've done it. We contacted every single plaintiff, had them sign a fee contract with us, got their consent to move forward as their representative, listed them all. I'm asking just how could that be managed if the case actually had to be litigated through until the end of the process? 351 plaintiffs is impossible. Well, you know, with respect, Your Honor, I disagree. I think it is possible. I think there are common issues that would make the management of the case easier to be done. There really would only be evidence showing when each individual plaintiff worked a rotation, the times and dates that they worked. You wouldn't need to have each individual plaintiff testify necessarily. In that case, wouldn't your complaint have to make specific factual averments with respect to each of the 351 plaintiffs, assuming this is not a collective action? Well, I believe that the complaint is sufficient in that regard. It does list in general terms each and every plaintiff's job, what they all did, when they worked in general terms, and, you know, for how they were paid, which are the main elements that the FLSA requires. I think there's an instructive case from the Ninth Circuit, the Gray case, which looked at this issue in 1971. That case had 11 individuals suing their employer for the same damages under the FLSA that the Halleck plaintiffs are alleging, and there was another individual who also sued. Those cases were combined. And the Ninth Circuit said, essentially, two things that are instructive. One, it said, the FLSA's procedures for collective actions are not very clear. And two, it said, the joinder of several plaintiffs together does not convert a consolidated action into a collective action. And I think what that means is 351 is more than several. It is, and the district court noted that, but it begs the question, where along that line between 12 and 351 does a plaintiff's get converted from a collective dual class action? There is no guidance from case law. There certainly is no guidance in the FLSA. It is our... What do we make of the declaration that Mr. Halleck identifies himself as lead plaintiff? It's cultural more than anything. Mr. Halleck came to this country about 30 years ago as a Chaldean Christian to El Cajon, California, escaping persecution in Iraq. He is an esteemed member of that community. But he's represented by counsel, right? He is represented by counsel. So the counsel assists the client in developing the declaration in which he's represented as lead plaintiff. The term lead doesn't have any meaning in a collective sense or a representative sense. It has the meaning that he is a leader in his community. And as a result, he has been able to be in touch with many other plaintiffs who were also employed by defendants. Well, lead plaintiff is a term of art in our world. Why should we assume that there's some other meaning to it? Well, he isn't identified as a... Is that in the record? It's correct, Your Honor. However, he isn't identified as a lead plaintiff in the pleading. No, I understand that. He's identifying himself as... That wasn't Judge Seaborg's question, though. Well, he's identifying himself as a lead plaintiff in his declaration, but again, not for purposes of putting himself in a representative capacity. He isn't saying, as a result, I am bringing this lawsuit on behalf of other similarly situated plaintiffs. He sounds like... He says, I know personally 300 Iraqis who have done work at Fort Irwin. That begins to sound like that. And there are no other individual claims appearing in the record. Individual claims in the lawsuit? Yeah. Well, there aren't, Your Honor, the claims that were brought. There aren't. That's the point. And I don't dispute that. The lawsuit itself alleges the FLSA claims and some other claims that may or may not survive. But the FLSA claims themselves are able to be brought by multiple plaintiffs in the manner that the plaintiffs have brought. There's another concept that I believe is important here, which is the federal rule or the federal equity that says plaintiffs should be the masters of their own complaint. We have a rule of the well-pleaded complaint. The Caterpillar v. Williams complaint, I believe, is... A lawsuit is instructive on that. Now, that was a removal action, but I believe the concept is parallel. The plaintiffs in Caterpillar sued their employer for breach of contract. The defendants in removing it to federal court told the federal district court, this claim necessarily requires a looking at the collective bargaining agreement. Therefore, the NLRA is at issue, so there's a federal question. The district court agreed in denying the plaintiff's motion to remand to state court. The plaintiffs appealed, and the district court said... I'm sorry, the circuit court said no. The plaintiffs brought the complaint they wanted, and the case should be remanded to state court. The defendants appealed, and the Supreme Court agreed with the circuit court, essentially saying we have a rule of the well-pleaded complaint. If the plaintiffs in that action did not want to bring a federal lawsuit, they didn't have to. In fact, they didn't. They alleged state law violations, breach of contract. The case was then remanded with instructions. The case was overturned and sent down with instructions to remand to state court. The well-pleaded complaint rule is the same here. The plaintiffs could have brought a collective action under the FLSA, no question. They could have brought a class action under Federal Rule 23, but they chose not to. Well, but it's not clear. That's not at all clear. I mean, to take right from your First Amendment complaint, you say defendants, plural, failed to pay plaintiffs, plural, for all hours worked in excess of 8 a day or 40 in a week at overtime rates. And that goes along with no other individual claims stated except for Halleck, who said he's the lead plaintiff, and this looks every bit like a collective action. Well, in the complaint, the plaintiffs referred to the 351 plaintiffs that are in the caption. Lots of blanks, people to be added later? There were some blanks. However, the blanks themselves or the number of plaintiffs themselves, I believe, are an indication that the complaint was not intended to be a collective action. If it was intended to be a collective action, there would have only been need for one or two or three or four plaintiffs, and the language that those plaintiffs were going forward on their representative capacity. So if you were granted leave to amend, what would you do? I mean, you just argued that you have a well-pleaded complaint. It doesn't sound like to me you'd amend it. Well, you know, I guess I'd have to consider it. The truth is this case was brought by another attorney who passed away this year, and so it has been left. You're living with it now. How would you amend it? Or is that a claim you're giving up? You know, I'm not worthy to submit that I would give up this claim. If this court reverses the district court, I would like to see the defendant's answer and perhaps take some discovery. No, I mean, I understand what you want. But, I mean, if one of the contentions on appeal is, well, fine, this complaint may not be adequate, but I would like the opportunity to amend. So my question is, how would you amend it? Well, if we were able to amend, we would allege if the court required a showing, an individual showing of how each individual plaintiff was harmed, we would insert the facts that were required. Do you have 51 individual plaintiffs and facts to go along with it? Well, we do, and the facts aren't that complicated, because they were all hired to do these role-play rotations in either 29 Palms or Fort Irwin. They went over the period of time that we alleged. They went in large groups for three-week rotations, came back home, and went again. The facts really aren't that complicated. The main area of damage has to do with a mispayment based on the time they were at each base doing each rotation. Again, it's not a very complicated. Did one have the same number of hours? Yes. Every single plaintiff that worked worked a three-week rotation in one discrete location. They would come as a group and leave as a group. There were between 10 and 12 rotations each year. They would come and go. In between, there would be no work done. They would be contacted by the defendant before the next rotation started, and they would all go en masse. Some of them received compensation for this? They received compensation. They all received compensation. They received $20 per hour for 12 hours worked. They all received the same compensation. Some people did, I believe, receive a travel stipend depending on how far they had to travel. I guess I would just like to add one thing. The Seventh Circuit looked at this issue more recently in a case called Harkin v. Riverboat. In the Seventh Circuit, I think, said something that was instructive. Is this in your briefs? Well, the case actually was cited by the defendants. In their brief? In their brief, yes. And what the Seventh Circuit essentially said was they dismissed a group of plaintiffs who had filed a collective action, and they did not file their opt-in paperwork. And they essentially said the oddity of the case, the special oddity of the suit, is that had it not been designated in the complaint as a collective action, that is an action on behalf not only of named plaintiffs but of others similarly situated, there would have been no requirement to file the written consent. Essentially, the defendants have jumped into the driver's seat of the plaintiff's complaint, taken the bus down a road that the plaintiffs did not want to go. I believe that is against the weight of the well-pleaded complaint rule. Well, really, the well-pleaded complaint rule is addressing a different circumstance. It is, Your Honor. It isn't. I realize the plaintiff is the master of his or her complaint. No question about that. Honestly, the well-pleaded complaint rule is addressing a completely different issue. Well, I think the Seventh Circuit's comments are instructive then, which is that a lawsuit that's a collective action has in it special affirmative language that plaintiffs are suing on behalf of themselves and similarly situated plaintiffs or similarly situated employees. If it doesn't have that language, it's not a collective action. And there is no case or there is no guidance in the FLSA that says at a certain point with a certain number of plaintiffs, a case has to be magically transferred from a consolidated action to a collective action. I'm not quite sure. Help me out with this. What we do with the Secretary of Labor's involvement in the case, the Secretary filed a complaint. Defendants pwned it up $700,000. It went to pay 152 individuals. Those are individuals that are involved in your lawsuit also? There are, Your Honor. So they're on a completely different footing, aren't they? They are, Your Honor. How do we deal with that? I have two responses to that, if I may. The first is that there was a motion for summary judgment down below on this very issue. It was fully briefed. However, it was never ruled on. So I don't believe it's necessarily before this Court now. However, having said that, the proposed second amended complaint makes an allegation that the consent decree might be able to be set aside if there were constitutional problems with it. That's at the very beginning of its exploration. Again, I'm at sea on this thing. How is it that it covers only 152 of these individuals and not the entire universe that you would like to bring into your complaint of 350-something? I'm sorry. I missed the first part of your question. Why is it that the settlement involved only 152 of these people? What happened to the other 150-plus who are in your complaint but not covered by the settlement with the Secretary of Labor? I don't have a definitive answer to that question. When the Secretary of Labor took up this issue, they did not, I guess, do the diligence required to make sure every single person that should have been captured was captured. We don't know that, though, do we? They may have done the due diligence, decided it only covered these 152, that the others, for some reason, which we don't know, weren't covered. The excerpts of record have the consent decree in it, and I don't believe that they did because in our lawsuit, in the Palak lawsuit, there are 199 plaintiffs that worked side-by-side with the people that were in the consent decree during the same period of time. That's why I wonder why they only covered 152. Maybe the other side can help us. The consent decree, if I may, and I will end after this, the consent decree covered many more than 152 of these workers. There is only 152 of the people in the consent decree that are named in our lawsuit. Oh, I see. Okay. Very good. Thank you, Counsel. Thank you. May it please the Court, I'm Alan Foster, and I represent L3 defendants. Going to the question that Judge Trott was just asking about the Secretary of Labor's action, one thing is clear, and that is that when the Secretary of Labor brought her action, it terminated the rights of those who were in the consent decree. to be in this action, and that's what the Court below held, and the statute is as clear as a bell on that subject, Section 216C. So why are plaintiffs – what happened to the plaintiffs that were not included, and do you have an explanation? I don't have an explanation. There was the usual investigation by the Secretary of Labor before the Secretary of Labor brought the lawsuit, and the Secretary determined that these were the employees. The investigation determined that these were the employees that were entitled to relief, and there was a consent judgment. And I don't know any more than the fact that that was the result of the investigation. We can't presume irregularity on the part of the Secretary's investigation. I don't think we can. Is this the Secretary of Labor standing by you? No, Your Honor. No, this is the representative of the lawyer for the other defendant who's also with us today. Are you going to argue? 9L3. I just wanted to let Your Honors know that I was going to let Mr. Foster take the lead on the argument, but if they had any questions for me, then I would be available. Thank you, Counsel. Thank you. So, no, I don't think we can presume. If there is a presumption, I think it should be that the Secretary of Labor's investigation was thorough and that those were the people who were, in fact, entitled to relief. But the statute only terminates the rights with regard to those people who are covered by the Secretary of Labor's action. But, clearly, I believe the district court was correct in dismissing the child plaintiffs. I don't believe that the issue has been preserved on appeal. It's not listed among the issues presented. I think that one's gone insofar as the 199 child plaintiffs are concerned or the 151 child plaintiffs are concerned. That's good news. Your consolidated action is now down to 150, right? It's down to 199. Yes, sir. It's down to 199. It's only 10 times bigger than any consolidated action that has ever been recognized under the FLSA. But now I'd like to see. Siri, where do you draw the line? I mean, I can say as a matter of gestalt that maybe over 100 is too many or maybe over 300. But as a reasoned proposition, I have trouble articulating that. Well, I think while Rule 23 is not binding in Section 216 actions, I think we can look to the jurisprudence under Rule 23 for some guidance. And as we know, 20 is too few, 20 to 40 may be enough, and over 40 is yes. So I think what we're looking at the guidance from Rule 23 is that when you have over 40 plaintiffs, that it is something that should be brought as a collective action rather than as a class action, rather than as an agglomeration of actions. But you were exactly right, Judge Seaborg. What is this complaint going to look like if they were given the ability to amend? Well, it's hard to say because they weren't. Either they're going to have to amend on all these individual plaintiffs and with allegations or not. I find this a very curious case because I take the points that you raise, and it certainly looks like a collective action in some respects. On the other hand, they seem to have tried to plead an individual action. Well, I think it's one thing we need to look at, and that is what the court below said as the reason why the court below found it to be a collective action and to see whether or not the court below is correct. You're talking about Judge Reel now? Judge Reel. And Judge Reel said this case involves several hundred plaintiffs, including blank spaces provided for the joinder of additional plaintiffs in the future, whose future joinder would necessarily imply that the current plaintiffs are proceeding on their behalf. So let's look to see whether or not that's correct. Well, it is correct. We know that. And that is correct because the blanks, the blanks, which they say were there for housekeeping purposes and so forth, the blanks that are in the original set of plaintiffs, you can go through and compare the subsequent pleadings, the summons, which is supposed to contain the names of all plaintiffs. And just for example, you can see that blank number 28 in the original summons became Juliet Seelim in the subsequent one. You can go through, and there are more and more and more of them. The blanks did become people. So when this complaint was brought, it's clear as a bell that the blanks were not some housekeeping thing, but were for future plaintiffs to be added. But let me just jump ahead a bit. I mean, what by denying leave to a man means that you are ostensibly denying recovery for a lot of folks. So let's say you grant leave to a man. And they pare it down as limited to the folks they actually identified in the first complaint. What's wrong with that? Because Congress struck a balance. This isn't a question of ours just saying, well, we don't like the result here. No, no, no. Congress struck this balance that defendants are entitled to know who's suing them. Right. So they're limited to the people first identified in the first complaint, not players to be added later. And they're required to identify those specifically. What's wrong with that? But if the original complaint was a collective action, then they have failed to file the consent. And the requirement of the consent was specifically added by Congress for a reason. No, I understand that. But they say, well, we didn't mean to file it as a collective action. And that implies, well, we could file an amended complaint that would be a series of individual actions. And then you would have the opportunity to say, no, you can't have this many and it still be. But, I mean, that's what you do when you grant leave to a man. I'm struggling with the fact is it seems to me this complaint, there's an argument that the complaint can be saved. And if so, then it should be given leave to a man. Well. Persuade me why it just can't be saved. Because if you did that and if you allowed them to pursue, to proceed as individuals, you'd have 199 individual lawsuits which then are going to be severed. And so because as the court said in the case we cited in our 28J letter, as the court said, there is no jury that can withstand the parading before them of, in that case, 22. In this, I mean, that case, 12. In this case, 199. There is no jury that can withstand 199 people coming before them and saying, these people didn't pay me the amount I should have been paid. So you're severed in 10 cases? We don't know how it would properly be severed. What we do know from what Mr. Halleck says is that there are substantial differences in the way, in the kinds of roles that these people play. But we don't know how it would be severed. But that's not the defendant's job. That's the reason why Congress said this is the way you have to do it. And why didn't Congress say all actions of this kind are only going to be allowed to proceed by way of collective action? They didn't do that. They did not. So the notion here that we may have case management challenges, which plainly we would, there are ways to address that by having lead cases to go forward and then try a few and see how it all shakes out. I mean, there are other ways to do it. And the fact that it isn't mandated to go forward as a collective action, we do, don't we, fall back on the plaintiff has a right to characterize their case as they want to characterize it. And they did. And they characterized it as a collective action. And they did file the consent. Well, I think go ahead, sir. Sorry. On that issue, going back to Judge Whalen's characterization of it in his transfer order, when was the first time you, your clients, characterized it as a collective action in any of your court pleadings? In the motion to dismiss. When it got to Judge Rehl.  It was filed before Judge Fess. Feas. Feas. It was filed before him. And then it was transferred to Judge Rehl. And it ended up going before Judge Rehl. So when it was leaving San Diego by way of transfer in front of Judge Whalen, was there any characterization on your side, this is a collective action? No. Judge Whalen was examining it from the transfer position. And he made the finding that it was a collective action based upon what he had in front of him. And then he used that finding to grant the transfer. Was that a necessary finding to grant the transfer? Well, it was certainly. He could have granted it anyway even if that factor had not weighed in favor of transfer. But it is a finding which he relied upon in reaching his conclusion. I think we fairly say that it is a holding. Did you argue that to him? No. No, we did not. So it's a description of what he thought it was. I mean, there's a difference between that and, say, a law of the case issue. And I understand it's entitled to some weight, but I don't think it binds anybody. Well, he, of course, it wasn't just a casual finding. He said he did it three times. And he relied upon it. And they didn't respond to the hand grenade, as Judge Streit put it. Why would you, though? I mean, you've got a transfer order. You're not going to appeal it. Could you say some of the findings are not adequate unless you're unhappy with the order? And they said, well, we accepted the order. Well, that's what they now say. They fought it. Well, I mean, as a lawyer, if I get a transfer order, I say, well, some of this is wrong, but I can clean that up later. And the question is whether I'm going to object or not to the bottom line. Well, I agree. I wouldn't do anything either if, in my heart of hearts, I thought my action was a collective action, and the judge said it, and I would have said to myself, well, you know, he's right about that. It is a collective action. And then, all of a sudden, though, when the statute of limitations had passed, and I found out that the fact that I called it a collective action with row plaintiffs one through a thousand, and I did that time and time again in summonses and in demands for jury trial and in motions to correct typographical errors, when I did that consistently throughout the case until I suddenly figured out that the statute of limitations had run on me without filing the necessary consents, and I then had to make it into a collective, into a joint action rather than then I would have said, well, you know, maybe I should have challenged it back then. But now what you hear from them is the cry of, I made a mistake. Because there wasn't a you can't look at this complaint with unnamed rows and then with blanks that are later filled in and with a Mr. Hallock who not only describes himself as the lead plaintiff but describes himself as the typical plaintiff and describes his experience as typical. And in the absence of his experience being typical, there isn't enough, there aren't enough allegations in this complaint to withstand Twombly. So he has to be typical in order for it to withstand Twombly. And when he is typical in order to withstand Twombly, it's a collective action. They can't have it both ways. You can't get by the pleading rule by saying it's collective and then say, but it really isn't. It's representative. If you get down to the 199, how much money is at stake here? Well, they say hundreds of millions. Well, what do you say? I'm just trying to get a feel for this. We're just talking about the overtime, not the fraud. It's millions, many millions on their theory of what's going on because they've said they deserve to be paid overtime for all hours over eight, 24 hours a day. That's their claim. So they're claiming 16 hours of overtime, of time and a half every day. And if you apply the Secretary of Labor's theory? Well, the Secretary of Labor's, the money we were talking about there was a compromise. And I believe they say that Mr. Halleck contends that he only got about 20 percent under the Chow settlement that he thinks he was entitled to. So, you know, even on that basis, you're talking about a bunch of money, which is the reason why the defendants in this case, we don't even know. There's not even an allegation in this complaint as to which of these plaintiffs work for which defendant. There's more than one defendant here. They're unconnected companies. And there's not even an allegation in the complaint that says I work for L3 or I work for TCS. There's no way for the defendants to know. That's the reason you have to have certainty. And that's the reason Congress, we submit, struck the balance that it did. If you would you like for me to address the fraud issue? You said we were not dealing with that. No, no. You can use your time anyway you want. Well. I was separating out the fraud in terms of your economic analysis. Right. Well, let me just address it briefly. Even the amended complaint alleges that the issue was a legal issue. If you look at the proposed amended complaint in paragraph 23, it says defendants required plaintiffs to sign an independent contractor contract when they knew that the jobs plaintiffs would, the jobs of plaintiffs would legally place them in the position of employee and not independent contractor. So there's no question that they're alleging a misrepresentation of law. And then the only question becomes, does one of the four exceptions apply? And you can go through paragraphs 10 through 12 of the amended complaint, which is where they take their best shot after knowing that their complaint had been dismissed. And they take their best shot to try to allege something to come within one of those exceptions, and there's nothing there. There's nothing there about a special relationship. There's nothing there about a fiduciary duty. There's nothing there about holding oneself out with special knowledge. The allegations simply aren't there, and we believe that the fraud count fails as a result. Thank you, counsel. Thank you. We'll give you two minutes for rebuttal. Well, thank you. Thank you very much for the rebuttal time. The Quicker Roads case that defendants have recently raised I don't believe is relevant to this discussion at all. That case involved claims under the ADEA and under Title VII, which have a very fact-intensive, burden-shifting analysis that's been announced from McDonnell Douglas, which would require each individual plaintiff to prove that the proposed reason for whatever negative job action, termination, or demotion was pretext. That's a very different set of proof than is required under the FLSA. Under the FLSA, you really just have to look at what was the period of time that a person worked and what were they doing while they were there. It doesn't require a plaintiff to prove basically pretext or that the company is lying. Do you have any answer to the argument that was just made that you can't make a fraud claim because it's a legal representation and the four exceptions don't apply? I believe the four exceptions do apply. One of the exceptions talks about a fiduciary, but it also says or similar relation of trust and confidence. I believe you have a situation that's unique here, where these plaintiffs were being shipped off to the very middle of 29 Palms and Fort Irwin to live for three weeks at a time without cell phones, without outside communications, relying totally on their employer for their food, security, shelter, and safety. I believe that puts these plaintiffs in a position of trust and confidence with their employers. I think the Yokohama exceptions or the restatement exceptions would look at that as a potential for the plaintiff to be able to state a claim that would allow for relief. You might then be adding a fifth category. Whenever the performance of the contract would put you in harm's way, we turn around the usual rule that there's no fiduciary relationship between the contracting parties and you say, oh, well, but the nature of this contract is such that it's going to be that there's some sort of special relationship. Is there really any basis for that argument? Well, it's difficult in law because most cases that look at this issue I will grant do not find a special relationship for employers and employees. And that's been again and again and again. And I understand for the policy reasons behind that. I just think this is a very unique employment situation. We have migrant farm worker situations that are very similar to that. Well, they are. Holding that there's a fiduciary relationship. They are and they aren't. And for this main reason, although the migrant farm workers are very vulnerable, they have the opportunity to stand up and walk away if they want. In this case, the plaintiffs are actually set in the middle of a military base with their freedom to move completely restricted for the time that they're there. I believe that fact alone puts them in a special relationship with their employer. Does the contract say that they couldn't say to the military authorities, I'm out of here? Yes, it does. They would have to rely on their employer to transport them from where they were to where they were going to go. They couldn't just leave. Now, whether there was a medical emergency or a set of facts that you could consider that a person could get out of there possibly, but it's not an immediate available solution. Okay. Thank you, counsel. Thank you, Your Honor. The case will be submitted and will be in recess for the morning. All rise for recess.
judges: Seeborg, Trott, Thomas